Submitted May 21, 2021, reversed March 2, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRYAN JOSEPH MERRITT,
*Defendant-Appellant.*

Josephine County Circuit Court
19CN02365, 19CN02595;
A172105 (Control), A172106

506 P3d 465

Defendant was found in contempt for violation of a restraining order. The restraining order was issued by a California court, and defendant violated it by calling the victim on the phone from Oregon. On appeal, he assigns error to the trial court's denial of his motion to dismiss for lack of subject matter jurisdiction. In defendant's view, ORS 24.190 (2011) restricts a court's power to enforce foreign restraining orders to three circumstances: when the protected party (1) arrives in the enforcing state, (2) presents a true copy of the order to law enforcement, or (3) files a certified copy of the order with a county clerk. *See* ORS 24.190(2)(a), (3)(a), (6). Because there is no evidence that any of those actions took place, defendant argues that the court erred when it denied his motion to dismiss for lack of subject matter jurisdiction. *Held*: The protected party never arrived in Oregon— and could not have done so merely by answering a phone call that originated in Oregon—and did not present a copy of the order to a county sheriff or a county clerk. Under ORS 24.190, meeting at least one of those conditions was a prerequisite for the trial court to enforce the restraining order. Therefore, the trial court erred in denying the motion to dismiss for failure to comply with ORS 24.190. The Court of Appeals did not reach the question of whether compliance with the statute was a matter of subject matter jurisdiction.

Reversed.

Pat Wolke, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stacy M. Du Clos, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Christopher A. Perdue, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, and Lagesen, Chief Judge, and Aoyagi, Judge.

LAGESEN, C. J.

Reversed.

**LAGESEN, C. J.**

Defendant was found in contempt on 16 counts of violating a restraining order. The restraining order was issued by a California court, and defendant violated it by calling the victim on the phone from Oregon on 16 separate occasions. On appeal, he assigns error to the trial court's denial of his motion to dismiss for lack of subject matter jurisdiction.[1] In defendant's view, ORS 24.190 (2011)[2] restricts a court's power to enforce foreign restraining orders to three circumstances: when the protected party (1) arrives in the enforcing state, (2) presents a true copy of the order to law enforcement, or (3) files a certified copy of the order with proof of service with a county clerk. *See* ORS 24.190(2)(a), (3)(a), (6). Because there is no evidence that any of those actions took place, defendant argues that the court erred when it denied his motion to dismiss for lack of subject matter jurisdiction. For the reasons that follow, we conclude that the trial court erred in denying the motion to dismiss for failure to comply with ORS 24.190, although we do not reach the question of whether compliance with the statute is a matter of subject matter jurisdiction.

We review a court's interpretation and application of a statute for errors of law, first examining the statute's text and context, then any relevant legislative history. *See State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009) (outlining methodology).

The relevant facts are undisputed. A California court issued a three-year "Criminal Protective Order - Domestic Violence" in 2017. That order prohibited defendant from having any contact with J. Sometime later, but while the restraining order was still in effect, defendant was detained in the Josephine County Jail on an unrelated matter. While in jail, he called J on multiple occasions. An

---

[1] Defendant made the motion ahead of trial and renewed it later. Because the fact that defendant raised the motion twice is immaterial to our resolution of this appeal, for ease of reading, we treat the motion and renewal as one motion.

[2] Amendments to ORS 24.190 came into effect January 1, 2022. For the purposes of this opinion, all references to that statute will refer to the 2011 version that was in effect at the time of the relevant trial court proceedings. *See* Or Laws 2021, ch 326, § 2.

investigating detective monitoring those calls learned about the restraining order. The jail blocked J's number, but defendant evaded the blockade, successfully reaching J through three-way calling. During the calls, defendant asked J to "help [him] get [the restraining order] removed so [he] can contact [her]." Without ever locating or contacting J,[3] the state brought the disputed contempt charges for 16 violations of the foreign restraining order under ORS 33.015 and ORS 24.190.

Defendant moved to dismiss for "lack of jurisdiction, improper venue and, in the alternative, the accusatory instrument is statutorily insufficient." He argued that the court's general authority to impose punitive contempt sanctions under ORS 33.025 does not provide authority to enforce the orders of other courts. The state countered that the court had authority to enforce the order under ORS 24.190 and ORS 24.105 or, alternatively, under the court's inherent authority. The state attached a copy of the protective order to its response, which defendant later pointed out was an uncertified copy transmitted by fax. The trial court denied the motion.

The case proceeded to trial. At the close of the case, defendant renewed his motion to dismiss. He pointed out that the state had not proved that the protected person, J, had "arrived" in Oregon, and argued that the state had not demonstrate that the prerequisites for enforcing the order under ORS 24.190 were satisfied. The court declined to revisit the ruling and found defendant in contempt on each count. Defendant appealed.

On appeal, defendant maintains that the trial court erred when it did not dismiss. In particular, he contends that the provisions of ORS 33.025 and ORS 24.190 mean that the court lacked subject matter jurisdiction to hold him in contempt for violating the California court's restraining order.

---

[3] The state did not introduce any evidence as to J's location at the time she received the phone calls. The investigating detective testified that defendant's calls to J were directed to an out-of-state phone number and that she "presume[d]" J was "at her normal place of residency." The detective testified further that she had "no idea" if J had ever arrived in Oregon.

As for ORS 33.025, defendant argues that that statute only confers authority to a court to hold a party in contempt for violating its own judgments and orders because, as defined in ORS 33.015(2)(b), "'Contempt' includes '[d]isobedience of, resistance to or obstruction of *the* court's authority, process, orders or judgments.'" (Emphasis supplied by defendant.) Thus, defendant reasons, ORS 33.025 does not, of its own accord, authorize a state court to enforce the judgment of a foreign tribunal. We do not understand the state to dispute that point; rather, as both parties appear to recognize, the main issue before us is the extent to which a different statute, ORS 24.190, authorizes Oregon courts to enforce restraining orders as if they were issued by Oregon courts.

As defendant points out, ORS 24.190 provides "several ways in which the protected person may render [a foreign restraining] order enforceable in this state." ORS 24.190 (2011), the version of the statute effective at the time of the trial court's proceedings, provided that such an order is enforceable when at least one of three circumstances is present: (1) upon "arrival" of the protected party in Oregon; (2) upon presentation by the protected party of a true copy of the order to the county sheriff; or, (3) upon the filing of a certified copy of the order with proof of service in any circuit court of the state. *See* ORS 24.190(2)(a), (3)(a), (6). In the absence of any of those three things occurring, defendant argues, an Oregon court does not have subject matter jurisdiction to enforce a restraining order.

In response, the state argues that the protected party arrived in Oregon by receiving defendant's phone calls, meaning that ORS 24.190 is satisfied. Alternatively, the state argues that compliance with ORS 24.190 is not a matter of subject matter jurisdiction. Finally, the state contends that even if the trial court did not have subject matter jurisdiction under ORS 33.025 and ORS 24.190, a provision of the federal Violence Against Women Act (VAWA), 18 USC § 2265(a), would have required the trial court to come to the same conclusion, and thus was right for the wrong reason. The state acknowledges it did not make its VAWA argument below.

That framing gives us essentially three question to address: (1) whether the ORS 24.190 prerequisites for enforcement of an out-of-state restraining order were met and, in particular, whether the state is correct that J "arrived" in Oregon by receiving phone calls initiated in Oregon; (2) if the prerequisites were not met, whether defendant was entitled to dismissal; and (3) if dismissal was warranted under ORS 24.190, whether the state has demonstrated that dismissal conflicts with VAWA.

We start with the first question. The relevant provisions of ORS 24.190 state:

"(2)(a)  * * *  [I]mmediately upon the arrival in this state of a person protected by a foreign restraining order, the foreign restraining order is enforceable as an Oregon order without the necessity of filing and continues to be enforceable as an Oregon order without any further action by the protected person.

"* * * * *

"(3)(a)  A person protected by a foreign restraining order may present a true copy of the order to a county sheriff * * *. * * * The order is fully enforceable as an Oregon order in any county or tribal land in this state.

"* * * * *

"(6)  A person protected by a foreign restraining order may file a certified copy of the order and proof of service in the office of the clerk of any circuit court of any county of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating or staying as a judgment of the circuit court in which the foreign judgment is filed, and may be enforced or satisfied in like manner. * * *."

It is undisputed that J did not present a true copy of the order to a county sheriff and did not file a certified copy of the order with a county clerk. What is at issue is whether J "arrived" in Oregon for the purposes of ORS 24.190 by receiving phone calls originating in Oregon. As noted, defendant argues that, because there is no evidence that J ever physically came to Oregon, there is no basis to infer that she ever arrived in Oregon for purposes of ORS

24.190. The state counters that "arrival in this state" can be interpreted to mean answering a phone call that was initiated in Oregon, citing methods for "appearing" in court for support. *See, e.g.*, ORS 419C.025 (telephonic appearance statute).

By its plain text, ORS 24.190(2)(a) provides that a foreign restraining order becomes enforceable immediately upon the "arrival" of the person protected by the order "in" the state of Oregon. To accept the state's argument that receiving a phone call from defendant equated to J's "arrival" in Oregon would require us to infer that the legislature used the word "arrival" in a highly unusual way to mean that a person need not be in Oregon physically to have arrived in the state. Taking that approach would be at odds with our methodology for construing statutes, under which we give ordinary words their ordinary meanings. *State v. Jones*, 286 Or App 562, 566-67, 401 P3d 271 (2017).

The state's interpretation of "arrival" could be rejected based on a common sense understanding of the word, without resort to a dictionary. But the dictionary adds to the reasons to reject the state's argument. To "arrive" is most relevantly defined as "to reach a destination : come to the end of a journey" or "to make an appearance : come upon the scene." *Webster's Third New Int'l Dictionary* 121 (unabridged ed 2002). Similarly, "arrival" commonly means "the act of reaching a destination or of coming to an end of a journey," or "the act of making an appearance or of coming upon the scene." *Id*. None of those definitions suggests that a person who receives a phone call originating in Oregon is a person who has experienced an "arrival" in Oregon. A person who receives a phone call does not "come upon the scene" in Oregon by virtue of the receipt of the phone call; they remain where they are. We are also unpersuaded that, because it is possible to "appear" by telephone in an Oregon court, a person "arrives" in Oregon merely by accepting a phone call originating in Oregon.

As noted, it is not disputed that a true copy of the restraining order was not presented to a county sheriff, and it is not disputed that a certified copy of the restraining order was not filed in circuit court. Accordingly, none of the

statutory prerequisites to enforcement of a foreign restraining order have been met.

In view of that, the next question is whether the trial court erred in enforcing the order. We conclude that it did. Although the terms of ORS 24.190 do not address the consequences of noncompliance expressly, if the legislature intended that foreign restraining orders generally would be enforceable notwithstanding the absence of any of the prerequisites of ORS 24.190, the statute, as written, would serve no meaningful purpose. In particular, with respect to the facts here, there would be no purpose served by specifying that a foreign restraining order is enforceable upon the arrival of a protected person, without the formality of presentation to a sheriff or filing in court, if the legislature intended for the order to be enforceable without those formalities when the protected party had never entered the state. From the fact that the legislature made arrival of the protected party a prerequisite to the enforcement of a foreign restraining order that has not been presented to a sheriff or filed in the circuit court, we infer that the legislature intended that such an order would not be enforceable absent arrival.

We note that this conclusion does not mean that the restraining order in this case was not enforceable; presumably, the order remained enforceable in the issuing court in California, where the protected party apparently remained. Our conclusion means simply that the state did not demonstrate that the legislature intended for the Oregon courts to enforce a foreign restraining order where the protected party's connections to the state are limited to receiving phone calls originating in this state, there is no evidence that the protected party ever came to this state, and there is no evidence that the protected party ever sought to invoke this state's assistance in enforcing the order by delivering it to a sheriff or filing it with a court.

In concluding that the requirements of ORS 24.190 ordinarily must be satisfied for an Oregon court to enforce a foreign restraining order, we do not determine—because we need not do so in this case—whether the requirements are one of subject matter jurisdiction or, instead, are

requirements that may be waived by the party subject to the enforcement action. *See, e.g.*, *Domus, Inc. v. Signature Bldg. Sys. of PA, LLC*, 252 A3d 628 (Pa 2021) (concluding that compliance with provisions of the Uniform Enforcement of Foreign Judgments Act was not a matter of subject matter jurisdiction and that party could waive right to enforce compliance). In this instance, defendant consistently has asserted that the case should be dismissed for noncompliance with ORS 24.190, so has not waived the right to enforce its provisions.

One loose end remains. As an alternative basis for affirmance, the state argues that if ORS 24.190 is construed to require a protected party to have arrived in Oregon as a prerequisite to enforcing a restraining order where, as here, the order has not been registered or presented to a sheriff, then the statute conflicts with a provision of VAWA, 18 USC § 2265(a), which requires that a "protection order," as defined in that act, be enforced regardless of compliance with any registration requirements. Defendant responds that the state did not make that argument below and, further, had it done so, defendant might have been able to develop a different factual record as to whether the order was enforceable under VAWA. Defendant also argues that the state's VAWA argument on appeal is underdeveloped because it is not framed in terms of preemption principles. Both of those arguments are well-taken, and, for that reason, we decline to consider the state's proposed alternative basis for affirmance.

Reversed.